nection that, the crime being statutory, it·was a qualifying circumstance, qualifying the right to prosecute, that the complainant and defendant should not have intermarried. It is true that this circumstance respecting the intermarriage of the parties is contained in the same section as that respecting the bar arising from the elapsing of two years from the commission of the offense of the finding of an indictment, and that the consequence of intermarriage as a bar is stated in the identical language that the consequence of the expiration of two years is, namely, that it is affirmed of both that each constitutes a bar; but when the dissimilarity between an act, on the one hand, such as intermarriage, and a condition, on the other, such as the mere expiration of time, is considered, it does not seem reasonable to treat the latter as though it had the same effect upon the statutory definition of the crime as the former. In other words, it may be true that into the very definition of the crime must be read the circumstance of the absence of intermarriage, without its being true that into such definition is to be read the circumstance of the nonexpiration of two years.

In the light, therefore, of the history of the statute and the effect to be given to changes in it as evidencing legislative intent, and in the light of the relation between the Penal Code, into which it became incorporated, and the Penal Law, in which it is now enacted on the one hand, and the Code of Criminal Procedure, on the other, and in the light of the rule of pleading which has prevailed respecting the form of indictments for this crime, and in the light of the decisions in the Nelson and Scharff Cases, the conclusion is reached that the provision in section 2176 of the Penal Law heretofore referred to is not a special statutory limitation qualifying the right to prosecute, and of the essence of such right, and an inherent part of the statute under which the right arises, but a simple statute of limitations, and as such a case, "when a less time is prescribed by statute," within the language of section 142 of the Code of Criminal Procedure.

This conclusion leads to the disallowance of the demurrer.

---

### In re BERNARD'S ESTATE.

(Surrogate's Court, New York County. March 20, 1915.)

DEATH ☞2—PRESUMPTION—LAPSE OF TIME.

Decedent made a deposit in a bank in 1819, and failed to claim it thereafter, and letters of administration on her estate were issued to the public administrator in 1901. At his application, an inheritance tax of $109.18 was assessed upon the deposit and accrued interest. *Held*, on application by such administrator to vacate the order fixing the tax, that no presumption could be indulged in that the depositor died prior to 1885, when the first inheritance tax law was passed, since, when the time of death is material in any action, it cannot rest on presumption, but must be established by direct proof.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 1–3; Dec. Dig. ☞2.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Application by the public administrator to vacate an order fixing the inheritance tax on the estate of Mary Bernard.　Denied.

Frank W. Arnold, of New York City, for petitioner.

Lafayette B. Gleason, of New York City, for state comptroller.

FOWLER, S.　This is an application by the public administrator to vacate an order fixing tax, entered on the 24th of July, 1911.　A similar application, made in November, 1911, was denied by this court.　The present papers contain little additional evidence.

The decedent deposited the sum of $47 in the Bank for Savings in the City of New York in the year 1819, and this deposit was never withdrawn by her.　There is no proof that a minor could not make a deposit in a savings bank at that time.　Letters of administration were issued to the public administrator in 1901, and the $47, with accumulated interest, was thereafter paid to the city chamberlain.　Upon the application of the public administrator a tax of $109.18 was assessed thereon.

The present application cannot be granted, unless the court finds that the decedent died prior to 1885, when the first inheritance tax law was passed in this state.　The failure of the decedent to demand payment of the deposit may be attributed to forgetfulness, owing to the comparative smallness of the amount deposited, or to acquisition of a residence or domicile in some distant state.　The fact that she did not demand payment would not, of itself, justify the court in presuming that she died some time prior to the year 1885.　When the time of death is material, it cannot rest on presumption, but must be established by proof.　Nepean v. Doe, 2 M. & W. 894.

Application to vacate order fixing tax denied.

---

(89 Misc. Rep. 88)

### In re STACEY'S ESTATE.

(Surrogate's Court, New York County.　January 16, 1915.)

1. BANKS AND BANKING ⊛═139—PAYMENT OF CHECKS—REVOCATION BY DEATH.

    A bank, which pays checks after the death of the drawer with no knowledge of his death, is not liable for the amount thereof.

    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 406–409; Dec. Dig. ⊛═139.]

2. BANKS AND BANKING ⊛═140—CHECKS—RIGHTS OF HOLDER BEFORE PAYMENT.

    The giving of a check does not operate to transfer the amount thereof from the depositor to the holder of the check until it has been accepted by the bank.

    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 380–392, 394–397; Dec. Dig. ⊛═140.]

3. BANKS AND BANKING ⊛═139—PAYMENT OF CHECKS—REVOCATION BY DEATH.

    The death of the drawer of a check revoked the payee's authority to draw the money thereon, and such money paid the payee by the bank remained the property of the estate of the drawer.

    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 406–409; Dec. Dig. ⊛═139.]

---

⊛═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes